Fischer agt. Raab *et al.*

---

# NEW YORK COMMON PLEAS.

## JOHN FISCHER agt. JOHN RAAB *et al.*

*Referees — not bound to give up report till fees paid — Referee's fees not costs — when may be collected by process for contempt.*

A referee is not obliged to give up his report until his fees have been paid.

It is the practice now, as it has always been the practice of the court of chancery, for the court to compel obedience to its orders, by process of contempt.

The act of 1847 has abolished the collection of interlocutory costs, by process of contempt.

Referee's fees are not costs.

An order for the payment of moneys not collectible by execution, may, under the existing law, be enforced by process of contempt.

Rules of practice rest upon considerations of fairness no less than upon convenience. A person called upon to pay money should have presented to him evidence that the person who demands it has authority to receive it; and, for this reason, a demand for interlocutory costs should be made only by the party entitled to them, or by some person authorized by him to collect the money, and it is not necessary for the party upon whom the demand is made to require the exhibition of the authority.

Fischer agt. Raab *et al.*

A demand for the payment of referee's fees must be made personally, and the authority of the person making the demand must be shown.

Where bad faith is manifested by an appellant and his attorney throughout a proceeding, costs of appeal will not be allowed, and where a stipulation is required by the court as part of the terms of the reversal of an order or judgment, and the party elects or refuses to stipulate the order or judgment appealed from will be affirmed, *with costs.*

*General Term, November,* 1879.

APPEAL from an order made by judge JOSEPH F. DALY, dated December 4, 1878, adjudging the plaintiff guilty of contempt, and committing him to Ludlow street jail for his refusing to pay certain fees of a referee which he had stipulated to pay in a certain contingency, and which contingency had happened.

On the 2d day of September, 1878, the plaintiff, on motion of Henry Wehle, his attorney, obtained a preliminary injunction with an order to show cause why the same should not be made perpetual, restraining certain defendants (principally the officers and trustees) of the "Kranken Unterstützungs Verein Deutsche Freund Einigkeit," a voluntary unincorporated association, from drawing and receiving, and the defendant Fish, as a receiver of the Teutonia Savings Bank from paying out the moneys, or any part of the moneys deposited by said unincorporated association in said bank and why a receiver of all the property of the said association should not be appointed.

Upon the hearing of this motion, forty-two of the defendants (respondents) in opposition thereto, produced an affidavit signed and sworn to by them to the effect that the *plaintiff, himself,* made a motion at a meeting of the society, and then at a *subsequent* meeting, the *plaintiff, himself,* also made a motion to "*overthrow*" and "*cancel*" his former motion, "*and that the society continue as before.*" As the effect of this' affidavit would *estop* the plaintiff in his action, the plaintiffs attorney, Henry Wehle, very adroitly, in open court, impeached this affidavit contending that as the forty-two affiants were Germans, they did not understand what they

had sworn to, and that the fact was that the plaintiff did not make the *second*, or *subsequent* motion, but that the same was made by some other member of the society; a reference on this disputed question of fact was ordered by judge JOSEPH F. DALY to judge John A. Dinkel, " to determine and report upon such fact with all convenient speed; *the plaintiff to pay the expenses of said reference unless* the said forty-two defendants or a majority of them shall testify upon said reference that they did not make, for the purpose of their said affidavit, the statement that plaintiff made the motion aforesaid, in which case the defendants, represented by Mr. Langbein, shall pay such expenses."

The referee, after patiently hearing testimony for three months, both in the daytime and in the evening, made his report in favor of the forty-two defendants, and on the refusal of the plaintiff to pay the referee's fees, the order of December 4, 1878, was made by judge JOSEPH F. DALY, committing the plaintiff to Ludlow street jail.

This branch of the case is fully reported in the 56th of *Howard's Reports*, page 218.

The plaintiff thereupon obtained a writ of *habeas corpus* from the supreme court on the ground that judge DALY had no jurisdiction to issue the commitment. Judge BRADY dismissed the writ with costs and remanded the prisoner.

The proceeedings on the *habeas corpus* are fully reported in the case of *The People of the State of New York ex rel. John Fischer* agt. *John Reilly as sheriff of the City of New York* (*in the* 56*th Howard's Reports, page* 223).

The referee having filed his report and testimony, the forty-two defendants served a notice on the plaintiff and on the twenty-one defendants seeking affirmative relief, to proceed with the motion to make the injunction perpetual and that at the same time a motion would be made to dissolve the temporary injunction. The plaintiff having failed to file exceptions to the referee's report within eight days as required by rule 30 (old rule 39), then moved to set the same aside

and that he have a new hearing. . The three motions were argued together, and judge JOSEPH F. DALY confirmed the referee's report and dissolved the injunction. This branch of the case is fully reported in the 57th *Howard's Reports*, page, 87.

From the order of December 4, 1878, the plaintiff appealed.

*Henry Wehle*, for appellant, made and argued the following points :

I. The question as to whether a majority of the forty-two defendants had made the statement for the purpose of their affidavit, that the plaintiff had made the motion to overthrow the minutes of April twenty-eighth, was not referred to the referee for his determination and his adjudication upon that point is *ultra vires*.

II. The order directing the payment of the sum of $130 to the referee, could not be made without notice to the plaintiff's attorney.

III. The order of November twenty-seventh was a proceeding in the action and should have been served upon the plaintiff's attorney (*Code of Civil Procedure, sec.* 799 ; *Pitt* agt. *Davison,* 37 *N. Y.*, 235 ; *Leland* agt. *Smith,* 3 *Daly,* 320). But even if it was sufficient to serve the order to show cause upon the plaintiff in person, the plaintiff's attorney was certainly entitled to service of the order directing the payment of the sum of $130, which is a distinct feature of the order of the twenty-seventh day of November.

IV. The referee's fees in this case are in the nature of interlocutory costs, and cannot be enforced by arrest (*Code, sec.* 15 ; *Laws of* 1847, *chap.* 390). They are disbursements taxed as part of the costs (*Lansing* agt. *Lansing,* 4 *Lans.,* 395 ; *Ford* agt. *Ford,* 10 *Abb. Pr. R.* [*N. S.*], 74).

V. In order to punish a party for non-payment of a sum of money ordered to be paid a demand must be shown (*Gray* agt. *Smith,* 24 *How.,* 432 ; 3 *R. S.* [*5th ed.*], 850, *sec.* 4). No demand under the order of November twenty-seventh is

Fischer agt. Raab *et al.*

shown. The demand previous to that order being made by an unauthorized person would, for that reason alone, be of no avail.

VI. There is no foundation for the charge of contempt of court against the plaintiff, even if payment of the fees were incumbent upon the plaintiff. If non-payment of the referee's fees were ground for a proceeding for contempt under section 14 of the Code, still the order cannot be sustained as there is not even a suggestion that the rights or remedy of the party to the action were or could be " affected, defeated, injured, delayed or prejudiced," which is a prerequisite to a proceeding under section 14.

*George F. & J. C. Julius Langbein*, for the forty-two defendants, respondents, made and argued the following points :

I. The power of the court to commit the plaintiff for contempt in disobeying the order of the court on his own stipulation, cannot be denied successfully. The order to pay not having been complied with, the party may be punished as for contempt (*Code, sec.* 14, *sub.* 3 ; *see judge* J. F. Daly's *opinion in* 56 *Howard, p.* 218; *see judge* Brady's *opinion in* 56 *Howard, p.* 223). ·Judge Brady distinctly says : " The power to commit under the circumstances I do not doubt. The expensive process was adopted as a favor to the relator (plaintiff) on his promise to pay, and he was bound to keep it.

II. Plaintiff not denying the affidavits and papers upon which the order to show cause of November 27, 1878, was granted they must be taken as true, and as admitted to be true. Judge J. F. Daly, in his opinion and the appeal papers, show that on the return day of the order to show cause the plaintiff appeared by his counsel, Henry Wehle, and took certain purely technical objections. He did not deny any thing, read no affidavits in opposition, but relied solely and wholly upon his objections. He, therefore, did not dispute his liability and merely discussed the sufficiency of the

proof of such liability and the mode in which notice of the fact is brought to the court (*See judge* J. F. DALY's *opinion, supra*).

III. The violation of the order of September 17, 1878, after the service of the certificate upon him, was a plain, clear, open violation, and, therefore, a contempt of court for which he could be punished. Both judge BRADY and judge J. F. DALY agree upon this point. Judge BRADY says: "The event occurred and then the court directed the payment of the fees in accordance with the compact made. He refused or declined to pay, and for this contempt was committed." Judge DALY says: "Justice requires that he should be held to his stipulation. He agreed to pay the expenses of the reference in a certain event. His agreement was embodied in the order of reference; the event upon which his liability depends occurs. He is ordered to pay and he refuses, giving no reason" (*See opinion of* judges BRADY *and* J. F. DALY, *supra*).

IV. Demand of the referee's fees was legally and properly made. Judge DALY says: "Demand of the fees was not necessary in addition to the service of the order demanding him to pay." The order of the court of November 27, 1878, ordering the plaintiff to pay the referee's fees, was served upon him. It ordered him to pay them within three days. Judge DALY says "he is ordered to pay, and he refuses giving no reason." The affidavit of George Rudolph shows the demand, and that the fees were not paid.

V. It was not necessary that the plaintiff's attorney should also be served with the order to show cause why the plaintiff should not be punished for contempt. Service upon the plaintiff personally was sufficient (*Albany City Bank* agt. *Schermerhorn,* 9 *Paige,* 372; *Pitt* agt. *Davidson,* 37 *N. Y.,* 35). The last case cited shows the distinction between a criminal and a civil contempt, and holds that where the party himself cannot be found, then it may be served upon his attorney; the object being to give notice to the party pro-

Fischer agt. Raab *et al.*

ceeded against. There was no direction in the order to show
cause to serve the attorney for the plaintiff, and the case last
cited states distinctly that the statute in civil contempts fails
to state what the manner of service is, and leaves it to the
discretion of the court in effect. Service on the party to be
adjudged in contempt, was, therefore, clearly enough and
sufficient.

Van Hoesen, *J.* — The plaintiff stipulated to pay the
referee's fees in case he failed to prove before that officer
that certain persons had made an affidavit in ignorance of its
contents. He also obtained an order staying proceedings
upon the application for an injunction until the report of the
referee had been brought into court. The obtaining of the
report from the referee was, therefore, essential to the further
hearing of the motion for the injunction. It is true that the
court might, if so disposed, have vacated the injunction order
without waiting for the referee's report, but such was not its
pleasure. The referee was not obliged to give up his report
until his fees had been paid, and unless the court could com-
pel the plaintiff to take up the report, it would have been in
the plaintiff's power to postpone indefinitely the determina-
tion of the motion for the injunction. Especially would this
be so if the court deemed the production of the report essen-
tial to a proper understanding of the case.

The only obstacle to the obtaining of the report was the
refusal of the plaintiff to pay the fees which he had stipu-
lated to pay. Under these circumstances it was, I think,
eminently proper for the court to make such an order as
would result in the bringing of the report into court. It is
true that the order made required the payment of money,
but that did not prevent the enforcement of it in the manner
provided for the enforcement of other lawful orders. The
regular method of compelling obedience to orders is by pro-
cess of contempt. Such has always been the practice of the
court of chancery. Formerly interlocutory costs were col-

lected by process of contempt, but that is no longer the practice; the act of 1847 having abolished it. An order for the payment of money not collectible by execution may, under the existing law, be enforced by process of contempt. The fact that the payment of money is involved, and that before the final determination of the suit, does not, as the counsel for the plaintiff seems to suppose, make the order one for the payment of interlocutory costs. The referee's fees were not costs (*Concklin* agt. *Taylor*, 68 *N. Y.*, 221). They were not payable to a party to the cause. Costs are always payable by one party to another.

The order was not, in any sense, one for the payment of interlocutory costs. They could not be allowed as costs of motion (*id.*,); nor could any execution be issued to collect the referee's fees; there was no reason, therefore, why obedience to it should not have been enforced by process of contempt. We think, however, that the method of collecting these referee fees should have been the same as that formerly pursued for the collection of interlocutory costs. Rules of practice rest upon considerations of fairness no less than upon convenience. It seems to us fair that a person called upon to pay money should have presented to him evidence that the person who demands 't has authority to receive it. The demand for interlocutory costs should, for this reason, be made only by the party entitled to them, or by some person authorized by him to collect the money (*Wilkins* agt. *Stevens*, 19 *Vesey*, 117; 2 *Archibold's Practice, p.* 340; *Jackson* agt. *Sackett*, 6 *Cowen*, 39). A personal demand upon the plaintiff should have been made (*People* agt. *Bennett*, 4 *Paige*, 282), and the authority of the person making the demand should have been exhibited. In a word, the same reasons which required these formal proceedings for the collection of costs apply to the collection of the referee's fees in this case. The clerk of Mr. Langbein, who made the demand, does not appear to have had any authority from the referee, and he did not exhibit to the plaintiff any evidence of his right to receive

the money. It was not necessary for the plaintiff to require the exhibition of the authority (*Jackson* agt. *Sackett*, 6 *Cowen*, 38). Upon the ground that the right of Mr. Langbein's clerk to demand of Fischer the fees was not exhibited, and has not been shown, we think the order appealed from should be reversed; but, in view of the bad faith exhibited on his side, we shall not award costs to the plaintiff, and we make it part of the terms of reversal, that the plaintiff shall stipulate not to bring any action on account of his imprisonment.

*This stipulation must be handed up with the proposed order of reversal.*

CHARLES P. DALY, chief justice, concurred.

MEMORANDUM. — The general term itself wrote and handed down the following order:

> At a general term of the court of common pleas, held at the county court-house, in the city of New York, on the 19th day of January, 1880.

Present — DALY, *chief justice*, and
VAN HOESEN, *justice.*

---

JOHN FISCHER, APPELLANT,
agt.
JOHN RAAB AND OTHERS, RESPONDENTS.

---

· The plaintiff's appeal from the order of judge J. F. DALY, entered December 4, 1878, having been reached in its order on the calendar, and argued by Mr. Wehle for the appellant, and by Mr. Langbein for the respondents, it is ordered that, if the appellant shall forthwith file a stipulation not to bring any action on account of his imprisonment, the order appealed from be reversed, without costs; but that said order be affirmed if the appellant shall refuse to give such stipulation. The order of reversal is upon the ground that the person who made the demand upon the appellant did not, when making such demand, exhibit his authority to collect the money, and

that ground being of a purely technical nature, the giving of a stipulation not to sue is exacted as a condition of the reversal. The reversal is without costs because of the extremely bad faith manifested by the appellant and his attorney throughout the proceedings.

The appellant having refused to give the stipulation, and it being so recorded, the general term thereupon made the following order:

> At a general term of the court of common pleas, held at the county court-house, in the city of New York, on the 19th day of January, 1880.

Present — Hon. CHARLES P. DALY, *chief justice*, and
      GEORGE M. VAN HOESEN, *justice*.

JOHN FISCHER, APPELLANT,
        agt.
JOHN RAAB AND OTHERS, RESPONDENTS.

An order having been entered on the 19th day of January, 1880, ordering that if the appellant shall forthwith file a stipulation not to bring any action on account of his imprisonment, the order of judge J. F. DALY, entered December 4, 1878, appealed from, be reversed, without costs, but that the order be affirmed if the appellant shall refuse to give such stipulation, and said order of January 19, 1880, reciting that "the order of reversal is upon the ground that the person who made the demand upon the appellant, did not, when making such demand, exhibit his authority to collect the money, and that ground being of a purely technical nature, the giving of a stipulation not to sue is exacted as a condition of the reversal. The reversal is without costs, because of the extremely bad faith manifested by the appellant and his attorney throughout the proceedings," and it appearing by a written memorandum made by chief justice DALY, now on file with the clerk of this court, as follows: "Plaintiff elects not to stipulate; C. P. D," on motion of J. C. Julius Langbein, Esq., attorney

for the defendants, respondents, it is ordered that the order of judge J. F. DALY, entered December 4, 1878, be and the same is hereby affirmed, with costs.